Good morning and may it please the court, Tripp Johnston on behalf of Ms. Motley, the appellant in this case. I will do my best to reserve two minutes for rebuttal. On the eve of trial in this case, the Supreme Court decided Dubin, a case that is critical to the issue presented here, which is whether Ms. Motley should do a mandatory additional two years in prison on top of the 13 years she's serving for the underlying health care fraud in this case. And what Dubin said is a defendant uses another person's means of identification in relation to a predicate offense when the use is at the crux of what makes the conduct criminal. So we have to look carefully at what the predicate offense is to determine whether the use or misappropriation of an identity will add on this mandatory penalty. And this is not a case where the government has charged the predicate offense of making a false statement in an application to become a Medicare provider. It's not a case where the government has alleged obstruction into the investigation of health care fraud that has been discovered. Instead it's a case, and I ask the court to look carefully at the actual charging document here in ER 1241-44 where the scheme is described as submitting claims for medically unnecessary durable medical equipment and also submitting claims for either unnecessary or undone repair of this equipment. So just to be clear, so could the government have charged Ms. Motley with making a false application when she established the two companies in the name of her mother and her nephew? If the quiz is what would that statute be, I don't know. But the question is can the 1028A attach to a predicate offense here based on the government's theories? And I want to go through the government's theories they presented to this court because the actual criminal conduct, the crux of what makes the health care fraud illegal is claiming that it's medically necessary, is claiming that you made a repair that was necessary or actually did the repair. What the government has argued is that this is something else. But we do have the recent decision of Parvis, which I think is actually Ms. Motley's case, not the government's. And let me start there to give a little more meat to the bones of what the important distinction is. In Parvis, this case said under Dubin, the evidence must be, sorry, the underlying predicate offense there was passport fraud, which the relevant statute defines as willfully and knowingly making any false statement in an application for a passport, essentially in order to obtain that passport. In that case, this court said that goes to the crux of the criminal conduct. The actual predicate offense is false statements in a passport application. The defendant in that case submitted a letter purportedly from a doctor whose name and identity she misappropriated to say that her daughter had an illness that didn't require her to be there, which is required. That goes to the heart of it. That's a false statement in an application for a passport. But what the government's problem here is the claim that Ms. Motley misappropriated other people's names for ownership of action in Kaja has nothing to do with the specific offense here, or at least the crux of it, because the courts have said there could be a but-for causation if Ms. Motley hadn't have put their names in those applications or misappropriated their names. That's still not enough to get to crux. So how do we get to crux? The government says, well, look at the way they coded their submissions to Medicare. That was the KX argument, that every provider has to put a KX beside a request for reimbursement. It's an honor system. Medicare is very busy. There are many claims. And their suggestion is somehow by using other people's names as the titular heads of these companies, that that makes it the crux of the problem. But let's actually look at the evidence that they cited, the transcript evidence, because what we hear from their expert is only that KX tells us that the supplier has reviewed the coverage criteria, that the beneficiary for whom they're submitting the claim meets the coverage criteria. Or later on, that Medicare requires and expects a provider to be responsible. The provider in this case is Action and Kaja. The provider isn't another individual, whether it's Brian Brown or Ms. Motley's mother. But given her criminal record, I mean, there was a risk that if she had submitted these claims under her name that they would have been rejected by the government, right? Judge Lee, I am so glad you asked that question, because the government does try to slip this into the brief. It's a footnote, footnote two on page seven, to suggest that very theory. But look carefully at what the citations are. Nothing in the evidence before the jury. The question is whether there was sufficient evidence before the jury to support this conviction. Those convictions are only known from the pre-sentence report. There was nothing offered at trial to suggest that Ms. Motley would not be eligible for that. And that's what we have to look at. We have to look within the record of the trial itself. So how is it the jury came back with its answer? Your Honor, if I could answer that question in every case, I'd be... But that's the problem here, because the standard for sufficiency of evidence for a jury verdict is extraordinarily deferential. It is, Your Honor. And the question was put to the jury, and they answered it. They did. But we still have to look ourselves, the court, at the district level when a Rule 29 is made, the appellate court, to determine whether the evidence is sufficient. So did the jury not know about Mance and Brown? Sorry, Madsen Brown? Mance and Brown. Isn't that her mother and nephew? No, I think that that was before the jury. So the jury was aware of them, and were they aware that these companies had been incorporated in their names? Yes. And that they had not consented to that? They were not a part of this scheme? Yes, Your Honor. They were aware of that. Okay. Did they know that Ms. Motley could not have filed those applications in her own name? They do not know that. Or the government hasn't pointed anywhere in the record, and if I missed it, I will be happy to hear what it is and respond in rebuttal. But no, and that's why I think Judge Lee's question is so important. Go ahead. Was Ms. Motley authorized to sign off on these forms and fill out the forms that had the KX designation on them? Well, that goes to the government's other theory, the audit theory, that even though there's an honor system, compliance teams do regular unannounced visits at these facilities. And what we have from the compliance officer who visited both Action and Conjura is that Ms. Motley introduced herself as the manager in charge each time that she was there. Ms. Motley signed the compliance forms. And again, don't take my word or even the compliance officer's word for it. Look at the government's exhibits in their supplemental excerpts of record that shows the organizational charts of both Action and Conjura, where Tamara Motley is identified as the chief compliance officer. Why does she use Muntz and Brown's name then? Well, that's a good question, Your Honor. And again, we're within the actual record of the trial itself. The government here on appeal has dropped a footnote to propose a solution. But that cannot be taken into consideration for the purposes, was the evidence sufficient that was presented at trial? And there's a question of whether they could have presented it. But they didn't try to. There were no, therefore there was no litigation on the admissibility of her prior record. And if you look at the CFR, and I'm sorry, I do want to reserve some time for rebuttal. I'm still puzzled just a little bit. So let's suppose that there was evidence before the jury that came out of the footnote, out of the government's footnote, that showed that Ms. Motley was not eligible to establish these companies and had to use the names of her mother and nephew in order to do it. That still wouldn't disqualify her from signing the compliance forms, right? Would she have been disqualified from signing that? I don't know the answer to that, Judge Bybee, but let me back up just to one part of the premise of your question. That footnote does not say that she would not have been authorized to set up this Medicare provider service. If you look at the CFR and you look carefully at what the government says, it says that Medicare will consider certain felonies. They list some. It's not an exclusive list, but none of them are the prior drug possession felony that Ms. Motley had sustained. The CFR says nothing about the misdemeanor convictions that the government proposes. So we can't say with certainty that she would not have been able to do that. So to go back to Judge Lee's question, would that be enough? We don't even know that. That's why you have trials. That's why you have arguments about whether that would even be admissible evidence in this trial in 404 and 401 and 2. We don't know. We simply don't know. But if you even take that footnote at face value, it says the government doesn't know whether Ms. Motley could have applied or not. She did not. We know that, but that doesn't go to the crux. Exceeding your time, but we'll give you an extra minute for rebuttal. Thank you. I appreciate that. May it please the Court. Kristen Williams with the United States. The narrow question here is whether the defendant's use of her relative's identities was at the crux of her health care fraud. And because that evidence was more than sufficient, there was no error, much less plain error, particularly in light of what the Court has already recognized as extraordinarily deferential standard that should be applied here. My colleague suggested to the Court that they look at the predicate offense, and I would encourage the Court to do the same. The predicate offense here is health care fraud. And health care fraud in this case was a scheme to submit fraudulent claims with misrepresentations about the service being provided and whether it was necessary. And unlike the situation in Dubin or even in Hong, this Court's prior opinion relating to a patient's name being used, this was not the use of a patient's name in a claim. This was a misrepresentation as to who was making the assertion that this claim was valid, was in compliance with the Medicare rules. And so I think my colleague's argument would imply that there can only be an aggravated identity theft charge when there's some sort of false statement, that it's a 1001 charge or something. That's never been the law. It clearly applies in instances where you have wire fraud, mail fraud, here health care fraud, which is going to these misrepresentations. And here, you know, the consistent with the Supreme Court's opinion in Dubin, and that is a holding, unlike the case in Dubin, obviously, and in Parviz or in Thomas, which the government cited, the jury here was quite aware not only that it needed to be a use in relation to, but that it also needed to go to the crux of the fraud. And so that was both the evidence was admitted as to that. So what is the, what goes to the crux of the fraud here? Multiple things. So the use of those names in the applications created basically, opened the door for Action and Kaja to be able to bill, right? It's not just even a name on a incorporation document for Action or Kaja, even though that was also present here. In the Medicare provider application, as Cindy White testified, the provider, and it's not a provider in an abstract corporate sense, Action Kaja, there is an actual authorized official. And that's what Ms. Muntz or Mr. Brown were identified as the authorized officials. What do they have to do in order to get this provider number, in order to be able to bill? They have to promise that they're not going to submit fraudulent claims. They're going to know and abide by all the Medicare rules. And so that's the sort of initial. You can't get the provider number in order to be able to bill unless the government. So if Ms. Muntz had not had any priors, and if she had filed for Kaja and Action in her own name, then would we be hearing any ID fraud? The fraud really does, is in the setting up of Kaja and Action, right? No, not entirely, Your Honor, because you have this sort of setup of the initial provider application, which allows you to bill, allows you to get paid. But then you go beyond that. You heard there was testimony in the record about supplemental enrollment applications. Again, the same names persist in those, Muntz and Brown. You also have each of the claims themselves submitted with that modifier. So each and every claim in this case, the provider, in this instance, the authorized official, Ms. Muntz, Mr. Brown, are saying, I certify that this claim follows the Medicare rules, is compliant with. You're talking about every time they've submitted a bill? Every single time a claim was submitted. But didn't Ms. Motley sign those? No, the claims are submitted electronically, Your Honor. I believe that's an exhibit in our SCR. Is there a name on them? There is a provider name on them, yes. Just the Kaja or Action? Or does it have a person's name on it? It has the provider number for Action and Kaja. But it doesn't have any person's name on it? It does not. The only person's name is the patient name. But the person or the provider that is supplying that is, again, going back to the authorized official, that is Mr. Brown or Ms. Muntz, depending on the particular case. And then, in order to be able to continue to submit those claims, most of the claims in this case came after multiple inspections along the way. Why does Medicare do those inspections? Through places like the compliance team? As Ms. Bodman testified at trial, basically, Medicare is looking to determine who is responsible? Is there training to make sure that the Medicare's rules are going to be followed? Who's in charge? And so, as a part of that, the inspectors look at training records. They look at the meeting minutes for corporation meeting minutes. All of that, again, Ms. Motley is affirmatively representing, either by directing her employees to provide these personnel files that make it seem like it's Mr. Brown or Ms. Muntz, or she's actually saying it herself, I'm just a manager on call. I'm just a consultant. The actual owner is Ms. Muntz. Let's suppose that her mother had set up the company, knowingly, and then said to Motley, I would like you to manage these operations. I don't want to be here day-to-day, and I trust you, you know this business better than I do. Run the business for me. Now, is there a problem? There is not a problem. That is a scenario that happens- So we don't have a 1028A problem? If, so, but that's not the situation that we- I understand. I'm just trying to get an answer to my question. So is there a 1028A problem there? There is. In a scenario in which Ms. Muntz has set it up herself, knowingly provided that her daughter can do this, I think the question there would still be, is she providing Ms. Motley with that authority to commit fraud? So, you know, who is- Why would that matter? What is she, you know, if fraud's going to be done, you're going to have fraud. But the question here is whether we've got ID fraud, not whether we've defrauded the government. There's clearly a defrauding of the government going on in the way that we're submitting these bills. The question is whether you get an enhancement for ID, for the use of an ID. Yes, Your Honor, and I think that goes to, again, is Ms. Motley misrepresenting who is involved in actually certifying these claims? The hypothetical I gave you is her mother, her mother says, please set up this company for me. I'll bankroll it. You manage it. I don't want to be there day to day. Now, is there, is there an ID problem here? Well, but in that scenario, Your Honor, there, you haven't gotten to the predicate fraud that for the name to be used in connection with that, right? You have a scenario where- Sure, but, but Kaja and Action will be submitting, will be submitting the bills. The bills will be fraudulent just as they were in this case. They're not medically necessary. So there's still Medicare fraud going on and you can prosecute the fraud. The question is, do you get an enhancement for ID, for the use of the ID? Well, I think, Your Honor, under Osuna Alvarez, you still potentially would because it would be without that lawful authorization. Now, I want to say that that was an argument that was being made- And you think that's a good argument under Dubin? I think, Your Honor, that the Dubin court did not want to reach that issue and did not reach that issue of the actual without lawful authorization. But that's not what's before the court. So what puts us at the crux of the criminal act, in this case, the fraud? I mean, the hypothetical is clearly distinguished from the facts we have here. But what is it the jury had to conclude that it wasn't just using somebody's name, unless they're allowed to inference that using somebody's name must have some motive. But was there any evidence specifically given to the jury to explain why a defendant couldn't or chose not to use her own name? Well, I think the jury had a couple of things before it. So first off, there is the simple premise that people who are committing fraud often have somebody else that they want to out as the fall guy, the scapegoat. In this instance also, it would not have been that Ms. Muntz and Mr. Brown's names were definitely useful to Ms. Motley because they obscured the common ownership and control of the two companies. There was information in the record about that. Ms. Bodman said when she showed up at the inspection for Kaja, and Ms. Motley was there too, had no idea that there was a common control. Ms. White testified that in looking at those enrollment applications with two different people, without, for instance, going to Judge Bivey's earlier point about, I'm giving you, Ms. Motley, authority. That authority, again, there would have to be in the Medicare enrollment application, you identify the managers, the other people who have sort of authority in there. So you still have a scenario in which there is a concealment there if that person is not identified. But so in addition, you have, so you both have this, the knowledge that people are concealing something because they want to not be responsible for the fraud. You have the separation of the two companies, even though they're commonly controlled. And as to that footnote, my colleague is absolutely right. It is not in the record that, before the jury, but it is in the record. And to the extent we've got plain error here and a manifest injustice, I think you could consider it for that purpose. Wait a minute. It's not before the jury? The fact of her prior felonies is not before the jury. The fact of the application asking for criminal history, yes, the jury did have the application itself in front of it. So it did know that. They didn't know that she had followed, that she would have applied through Manson Brown because she had prior felonies. Right. And I think, Your Honor, that that may have been a part of it. That part was in front of the jury. The part that was in front of the jury is that she's not doing it in her own name and she's not doing it in a way that is going to reveal that she has common control and ownership over both companies. So that was certainly before the jury. She's disguising the common control and disguising who is responsible for the fraud by using her relatives' names in the application process, in submitting the claims and in the inspections that allow the billing to keep going. And I see I'm well over my time. So if there are no other questions, I will submit that the court's decision should be affirmed. Jury verdict should be affirmed.  Judge Bobbie, one of the first questions you asked is if she submitted the false ownership documents and got the Medicare provider number, is that the crux of the fraud? No, that's a but-for cause. Had she not done that, she could not do the fraudulent billing. But the question of fraudulent billing is not Ms. Motley hiding it from anyone. I invite the court to read the compliance officer's full testimony at ER 785 through 830 to see that Ms. Motley, at every opportunity, holds herself out to not be the visiting manager, someone overseeing things. I am the manager in charge. I think that's at 800-801. Repeatedly, Ms. Motley is signing off on the compliance reports. Ms. Motley is signing off on the inspection reports. She is holding herself out. And the government says, but she puts these other people forward so that she can hide behind the curtain in case fraud is found. The fraud is the fraud. What happens in the investigation of the fraud could be other criminal charges. But it is important. If we agreed with you here, what do we do? You would vacate the 1028A convictions. She still has the 1347 conviction. Correct, Your Honor. Thank you. Great. Thank you both for the helpful argument. The case has been submitted.
judges: CLIFTON, BYBEE, LEE